In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Nikola P. KOSTICH, Attorney at Law:

OFFICE OF LAWYER REGULATION,
Complainant-Respondent,

v.

Nikola P. KOSTICH, Respondent-Appellant.

Supreme Court

*No. 2011AP277–D. Oral argument September 7, 2012
—Decided November 27, 2012.*

2012 WI 118

(Also reported in 824 N.W.2d 799.)

535

For the respondent-appellant, there were briefs filed by *Lew A. Wasserman,* and *Law Offices of Jean M. Kies,* S.C., Milwaukee, and oral argument by *Lew A. Wasserman.*

For the Office of Lawyer Regulation, there was a brief filed by *Robert G. Krohn,* and *Roethe, Pope, Roethe, LLP,* Edgerton, and oral argument by *Robert G. Krohn.*

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶ 1. PER CURIAM. Attorney Nikola P. Kostich has appealed from a referee's report concluding that he engaged in professional misconduct and recommending that his license to practice law in Wisconsin be suspended for a period of 60 days.

¶ 2. We conclude that all of the referee's findings of fact are supported by satisfactory and convincing evidence. We agree that the appropriate discipline for Attorney Kostich's misconduct is a 60–day suspension of his license to practice law. We further conclude that the costs of the proceeding, which total $6,803.81 as of September 20, 2012, should be assessed against Attorney Kostich.

¶ 3. Attorney Kostich was admitted to practice law in Wisconsin in 1970. His disciplinary history consists of three public reprimands. In 1986 he was reprimanded on the basis of a criminal conviction for failing to file a tax return. *In re Disciplinary Proceedings Against Kostich,* 132 Wis. 2d 227, 391 N.W.2d 208 (1986). In 2005 he was reprimanded for failing to determine if a client had grounds for an appeal for over 30 months after being retained, failing to respond to the client's letters and phone calls, failing to inform the client he had no legal grounds for an appeal, failing to refund an advance payment of fees upon termination,

failing to provide the client's file upon termination, and failing to cooperate with an Office of Lawyer Regulation (OLR) investigation. *In re Disciplinary Proceedings Against Kostich,* 2005 WI 90, 282 Wis. 2d 206, 700 N.W.2d 763.

¶ 4. In 2010 Attorney Kostich was reprimanded for representing an individual on criminal charges in which he had previously consulted with the victim in the criminal case about a potential civil action against the person he ultimately represented in the criminal matter. *In re Disciplinary Proceedings Against Kostich,* 2010 WI 136, 330 Wis. 2d 378, 793 N.W.2d 494.

¶ 5. The misconduct at issue in the instant case arises out of Attorney Kostich's representation of L.P., who was indicted in August of 2006 on federal charges pertaining to distribution of crack cocaine. L.P. hired Attorney Kostich to defend her in mid-August 2006. Attorney Kostich agreed to represent L.P. for a $5,000 retainer and told her she would need to pay an additional $5,000 if the case went to trial. L.P. paid Attorney Kostich a total of $4,000 toward the retainer.

¶ 6. L.P.'s former boyfriend, L.B., was a co-defendant in the federal drug case. Attorney Mark Nielsen represented L.B.

¶ 7. Between August of 2006 and November of 2008, L.P. and Attorney Kostich had various communications either in person or by telephone regarding possible plea agreements. L.P. did not want to enter a plea to any sort of drug trafficking charge and was hoping to be able to plead to a misdemeanor rather than a felony.

¶ 8. In late 2008 Attorney Kostich experienced certain serious health issues which resulted in his absence from his law office from mid-November 2008 to early February 2009. Attorney Kostich had lost his

secretary a few months before this, and during his absence he had his daughter come in to serve as a part-time paralegal/secretary. Attorney Kostich testified at the hearing before the referee that he had instructed his daughter to tell clients who called that he was out of the office and would not be back for several months.

¶ 9. L.P. testified that between November 2008 and February 2009, she had tried to contact Attorney Kostich numerous times, but he never responded. She said she left messages with Attorney Kostich's daughter and at other times she left voicemail messages asking him to get back to her because she wanted to know what was going on. She said at times his voicemail box would be full and she would be unable to leave a message. L.P. denied ever being told that Attorney Kostich was experiencing serious medical problems or that he was going to be absent from his office. L.P.'s mother said she, too, made numerous attempts to contact Attorney Kostich, all to no avail.

¶ 10. On January 26, 2009, L.P. called and left a message saying she wanted to terminate Attorney Kostich's representation. In e-mails dated February 4 and 19, 2009, and in a letter dated February 23, 2009, L.P. or her mother confirmed their desire to terminate Attorney Kostich's representation. They asked for a partial refund of the $4,000 retainer. In the February 23 letter L.P. informed Attorney Kostich that she qualified for a public defender but that she needed him to withdraw as her attorney so she could proceed with new counsel.

¶ 11. It is undisputed that Attorney Kostich had no communication with L.P. from mid-November 2008 until March 2009. Attorney Kostich acknowledged that

during his absence from the office he did not send any letters to clients informing them about his illness and absence.

¶ 12. At a status conference on March 9, 2009, Attorney Kostich formally withdrew as L.P.'s attorney. L.P. subsequently entered into a plea agreement to a charge of "misprision of a felony," which was the lowest felony charge available. She was placed on probation. Attorney Kostich did not refund any portion of the $4,000 retainer paid to him and claimed that he earned all of it.

¶ 13. On February 8, 2011, the OLR filed a complaint alleging that Attorney Kostich's representation of L.P. resulted in three counts of misconduct. Count One alleged that by failing to communicate with L.P. between November 2008 and March 2009, during which time L.P. repeatedly tried to reach him to discuss her pending criminal matter, Attorney Kostich violated SCRs 20:1.4(a)(3) and (4).[1] Count Two alleged that by failing to respond to a letter or e-mails from L.P. or her mother concerning fees, Attorney Kostich violated SCR 20:1.5(b)(3).[2] Count Three alleged that by failing to take timely steps to withdraw from his representation after receiving numerous communications from L.P. and her mother discharging him, Attorney Kostich violated SCR 20:1.16(a)(3).[3]

---

[1] SCRs 20:1.4(a)(3) and (4) state a lawyer shall "(3) keep the client reasonably informed about the status of the matter; [and] (4) promptly comply with reasonable requests by the client for information; . . . ."

[2] SCR 20:1.5(b)(3) states, "A lawyer shall promptly respond to a client's request for information concerning fees and expenses."

[3] SCR 20:1.16(a)(3) states: "Except as stated in par. (c), a lawyer shall not represent a client or, where representation has

¶ 14.  Richard C. Ninneman was appointed referee. At the hearing before the referee, L.P. testified that no one informed her that Attorney Kostich was experiencing any medical issues and that she knew nothing about his medical problems until March 2009 when he withdrew from her case. L.P. estimated that during Attorney Kostich's absence from his law office, she probably made 50 attempts to contact him, all to no avail. L.P.'s mother estimated she tried to reach Attorney Kostich at least 15 times between November 2008 and February 2009.

¶ 15.  Attorney Kostich testified that prior to his absence from his practice, he told L.P. that time was on their side because as long as her former boyfriend was cooperating with the government, no pressure was being put on her and there was no trial date. Attorney Kostich said it was his feeling that the delay benefitted L.P. because in the meantime she was doing very well on monitoring by the probation department and she had gone into rehabilitation. He said none of L.P.'s rights were in any way compromised by the fact that he was out of his office and unavailable between late 2008 and early 2009.

¶ 16.  Attorney Kostich admitted that when he left his office due to illness in November 2008 he did not prepare any sort of letter to be sent to clients to tell them he was going to be gone for an extended period of time. He agreed that sending letters to confirm his absence would have been the best thing to do.

¶ 17.  The referee issued his report and recommendation on October 11, 2011. The referee found that the OLR proved by clear, satisfactory, and convincing

commenced, shall withdraw from the representation of a client if: . . . (3) the lawyer is discharged."

evidence all three counts of misconduct alleged in the complaint. As to the appropriate sanction, the referee noted that Wisconsin adheres to a system of progressive discipline. *See In re Disciplinary Proceedings Against Converse,* 2006 WI 4, ¶ 37, 287 Wis. 2d 72, 707 N.W.2d 530. The referee noted that Attorney Kostich has been the subject of three prior public reprimands, and he noted that the 2005 public reprimand involved some counts of misconduct which are similar to the violations in the instant case. The referee said under the circumstances, he had no hesitation in recommending that Attorney Kostich's license to practice law in Wisconsin be suspended for a period of 60 days as requested by the OLR in its complaint. The referee also recommended that the full costs of the proceeding be assessed against Attorney Kostich.

¶ 18. Attorney Kostich has appealed. He asserts that Counts One and Two of the OLR's complaint are multiplicitous, and that a 60–day suspension is disproportionate to the seriousness of the offenses. He asks this court to impose a fourth public reprimand. He also asserts that an award of restitution is not appropriate.

¶ 19. Attorney Kostich argues that Counts One and Two of the OLR's complaint are multiplicitous because the allegations underlying the two counts arose out of a single course of conduct. He argues that Counts One and Two should be treated as one offense, failure to promptly respond to requests from the client regarding the status of her case and for a return of fees.

¶ 20. Attorney Kostich also argues that the referee's recommendation for a 60–day suspension is disproportionate to the conduct at issue. Although he acknowledges that apparently no attorney subject to this court's supervision has been afforded a fourth

consecutive public reprimand, he suggests this would be an appropriate case to impose a fourth public reprimand.

¶ 21. The OLR argues that Attorney Kostich's conduct represents violations of three separate supreme court rules. It says although there may be a common element (ignoring the client), it does not follow that the charges are multiplicitous since there are separate policies and reasons behind each rule.

¶ 22. The OLR asserts there are a number of aggravating circumstances in this case, the most important one being that Attorney Kostich has been publicly reprimanded three times before, with the 2005 reprimand having similarities to the facts of this case (failing to keep a client informed). The OLR says Attorney Kostich refuses to acknowledge his misconduct and blames it on either his illness or an acrimonious break-up of his old law firm. The OLR says "had he shared information about his illness and his absence from the law practice with his clients, many of these problems may have been avoided."

¶ 23. This court will adopt a referee's findings of fact unless they are clearly erroneous. Conclusions of law are reviewed de novo. *See In re Disciplinary Proceedings Against Eisenberg,* 2004 WI 14, ¶ 5, 269 Wis. 2d 43, 675 N.W.2d 747. The court may impose whatever sanction it sees fit regardless of the referee's recommendation. *See In re Disciplinary Proceedings Against Widule,* 261 Wis. 2d 45, ¶ 44, 261 Wis. 2d 45, 660 N.W.2d 686. The referee's findings of fact in this case are not clearly erroneous, and we adopt them. We also agree with the conclusions of law that flow from the referee's findings of fact.

¶ 24. We reject Attorney Kostich's argument that Counts One and Two of the OLR's complaint are multiplicitous. As the OLR points out, SCRs 20:1.4(a)(3) and (4) require an attorney to keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests by the client for information. Supreme court rule 20:1.5(b)(3) addresses a separate category of lawyer responsibility—fees—and requires the attorney to inform the client of the purpose and effect of any retainer or advanced fee. Counts One and Two of the complaint address separate instances of misconduct and are not multiplicitous. Attorney Kostich acknowledges that he failed to keep L.P. reasonably informed about the status of her case and failed to promptly respond to her request for information about fees. He also acknowledges that he failed to timely take steps to withdraw from representation after L.P. left numerous messages saying she wanted to discharge him. Accordingly, we agree with the referee that the OLR met its burden of proof on all three counts of misconduct.

¶ 25. As to the issue of whether Attorney Kostich should be ordered to make restitution to L.P., the OLR stated at oral argument that it was not seeking a restitution award. We accede to the OLR's judgment on this issue.

¶ 26. As to the appropriate sanction, this court has repeatedly stated that it adheres to a system of progressive discipline. *See Converse,* 287 Wis. 2d 72, ¶ 37; *Eisenberg,* 322 Wis. 2d 518, ¶ 59. As the referee pointed out, Attorney Kostich's 2005 public reprimand involved conduct somewhat similar to that at issue here. In both cases he failed to respond to clients'

requests for information about their pending cases. Attorney Kostich admits he was absent from his office and uncommunicative with L.P. between November 2008 and early March 2009. He admits he never instructed his daughter to send letters to any of his clients or to the courts before which he practiced informing them of his absence. Although he claims he did instruct his daughter to tell clients who called that he would be out of the office for several months, L.P. and her mother both testified they were never given any such information. No testimony was presented at the hearing before the referee to challenge those statements.

■

¶ 27. Although Attorney Kostich maintains that L.P. was not harmed in any way by his failure to communicate with her, it is reasonable to assume that his failure to respond to dozens of messages left by L.P. and her mother caused L.P., who was facing federal felony counts that carried mandatory terms of imprisonment, acute distress. We agree with the referee that a 60–day suspension of Attorney Kostich's license is an appropriate sanction for his misconduct.

¶ 28. IT IS ORDERED that the license of Nikola P. Kostich to practice law in Wisconsin is suspended for 60 days, commencing January 1, 2013.

¶ 29. IT IS FURTHER ORDERED that Nikola P. Kostich shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶ 30. IT IS FURTHER ORDERED that within 60 days of the date of this order, Nikola P. Kostich shall pay to the Office of Lawyer Regulation the costs of this proceeding.

¶ 31.  IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. *See* SCR 22.28(2).

¶ 32.  DAVID T. PROSSER, J., did not participate.