ACCEPTED
01-15-00495-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
6/1/2015 7:47:30 PM
CHRISTOPHER PRINE
CLERK

01-15-00495-CV

NO. _____-CV

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
6/1/2015 7:47:30 PM
CHRISTOPHER A. PRINE
Clerk

**IN THE COURT OF APPEALS**
**FOR THE FIRST DISTRICT OF TEXAS**
**HOUSTON, TEXAS**

**OFFICER KIMBERLEY TRIMMER-DAVIS,**
**Relator/Plaintiff**

Original Proceeding
from the 295th Judicial District Court of Harris County, Texas
Cause No. 2010-11410
The Honorable Caroline Baker

PETITION FOR WRIT OF MANDAMUS

Respectfully submitted,

Kim K. Ogg
State Bar No. 15230200
kimogg@ogglawfirm.com

R. Scott Poerschke
State Bar No. 24067822
scott@ogglawfirm.com

THE OGG LAW FIRM, PLLC
3215 Mercer, Suite 100
Houston, Texas 77027
(713) 974-1600 – Telephone
(713) 621-2106 – Fax

ORAL ARGUMENT NOT REQUESTED

*Petition For Writ of Mandamus*                                           Page 1

## IDENTITY OF PARTIES AND COUNSEL
## [TRAP 52.3(a)]

**<u>Relator/Plaintiff:</u>**

Officer Kimberley Trimmer-Davis

The Relator/Plaintiff is represented by following attorneys in the trial court and in this original proceeding:

Kim K. Ogg
State Bar No.
kimogg@ogglawfirm.com

R. Scott Poerschke
State Bar No.  24067822
scott@ogglawfirm.com

THE OGG LAW FIRM, PLLC
3215 Mercer, Suite 100
Houston, Texas 77027
(713) 974-1600 – Telephone
(713) 621-2106 – Fax

**<u>Real Party In Interest/Defendant:</u>**

The City of Houston

In the trial court, the Real Parties In Interest/Defendant were represented by the following attorneys:

Henry N. Carnaby
State Bar No.  24064014
henry.carnaby@houstontx.gov

Suzanne R. Chauvin
State Bar No. 04160600
suzanne.chauvin@houstontx.gov

CITY OF HOUSTON
P.O. Box 368
Houston, Texas 77001-368
900 Bagby, 3rd Floor
Houston, Texas 77002
(832) 393-6309 – Telephone
(832) 393-6259 – Fax

It is unknown at that time who will represent the Real Parties In Interest/Defendant in this original proceeding.

**<u>Respondent:</u>**

The Honorable Caroline Baker
295th Judicial District Court
201 Caroline, 14th Floor
Houston, Texas 77002
(713) 368-6450 – Telephone

# TABLE OF CONTENTS
## [TRAP 52.3(b)]

IDENTITY OF PARTIES AND COUNSEL............................................................2

INDEX OF AUTHORITIES ..........................................................................6

STATEMENT OF THE CASE.........................................................................11

STATEMENT OF JURISDICTION ...............................................................12

STATEMENT OF FACTS ...............................................................................14

ARGUMENT ...................................................................................................18

    1.    STANDARD OF REVIEW: ABUSE OF DISCRETION FOR LEGAL PRINCIPALS ...............................................................................18

    2.    DISQUALIFICATION MUST BE BASED ON CLEAR AND CONVICING EVIDENCE.......................................................................18

    3.    THE CITY IS NOT ENTITED TO A PRESUMPTION THAT OGG RECEIVED CONFIDENTIAL INFORMATION FROM READY ......22

    4.    OGG'S REPRESENTATION OF TRIMMER-DAVIS IS NOT "ADVERSE" TO READY (WITHIN THE MEANING OF RULE 1.09(A)) ........................................................................................................27

    5.    OGG'S REPRESENTATION OF TRIMMER-DAVIS DOES NOT QUESTION THE VALIDITY OF PRIOR WORK PERFORMED BY OGG FOR READY (WITHIN THE MEANING OF RULE 1.09(A)(1)) 30

    6.    A REASONABLE PROBABILITY DOES NOT EXIST (WITHIN THE MEANING OF RULE 1.09(A)(2)) THAT OGG'S REPRESENTATION OF TRIMMER-DAVIS WOULD CAUSE OGG TO VIOLATE OBLIGATIONS OF CONFIDENTIALITY OWED TO READY UNDER RULE 1.05 .............................................................30

    7.    OGG'S REPRESENTATION OF TRIMMER-DAVIS IS NOT THE "SAME" (WITHIN THE MEANING OF RULE 1.09(A)(3)) AS THE MATTER INVOLVING READY .......................................................32

    8.    OGG'S REPRESENTAITON OF TRIMMER-DAVIS IS NOT "SUBSTANTIALY RELATED" TO READY'S 90-DAY TEMPORARY

SUSPENSION (WITHIN THE MEANING OF RULE 1.09(A)(3))...... 33

9. THE CITY HAS FAILED TO SHOW "ACTUAL PREJUDICE" . 37

10. EVEN IF OGG IS DISQUALIFIED UNDER THE RULES FROM REPRESENTING TRIMMER-DAVIS, PUBLIC POLICY DOES NOT WARRANT DISQUALIFICATION IN THIS CASE .......................... 41

11. THERE IS NO ADEQUATE REMEDY BY APPEAL ................. 44

PRAYER ...................................................................................... 45

CERTIFICATION ........................................................................ 46

CERTIFIACTE OF COMPLIANCE ............................................. 47

## INDEX OF AUTHORITIES
### [TRAP 52.3(c)]

**Cases**

Abbott v. Corpus Christi, 109 S.W.3d 113 (Tex. App.—Austin 2003, no pet.) 32

American Mortg. Sec. Funding Corp. v. First Louisiana Federal Sav. Bank, 1988 U.S. Dist. LEXIS 9576 (E.D. La. 1988) .................................................24

Arkla Energy Res. v. Jones, 762 S.W.2d 694 (Tex. App.—Texarkana 1988, orig. proceeding) .................................................................................21, 34

Ayres v. Canales, 790 S.W.2d 554 (Tex. 1990) ................................................38

B.F. Goodrich Co. v. Formosa Plastics Corp., 638 F. Supp. 1050 (S.D. Tex. 1986)..................................................................................................23, 24, 25

Banc One Capital Partners Corp. v. Kniepper, 67 F.3d 1187 (5th Cir. 1995) 24

Braun v. Valley Ear, Nose, and Throat Specialists, 611 S.W.2d 470 (Tex.Civ.App.-Corpus Christi 1980, no writ.) ...............................................26

Burt Hill, Inc. v. Hassan, No. Civ. A. 09-1285, 2010 WL 419433 (W.D. Pa. 2010)....................................................................................................42

Capital City Church of Christ v. Novak, No. 03-04-00750-CV, 2007 WL 1501095 (Tex. App.—Austin 2007, no pet)...................................................21

Cascades Branding Innovation, LLC v. Walgreen Co., 2012 WL 1570774 (N.D. Ill. 2012) .............................................................................................23

Cimarron Aric., Ltd. v. Guitar Holding Co., L.P., 209 S.W3d 197 (Tex. App.— El Paso 2006, no pet) ...............................................................................20, 38

Conoco v. Baskin, 803 S.W.2d 416 (Tex. App.—El Paso 1991, no writ)..........35

F.D.I.C. v. Howse, 802 F.Supp. 1554 (S.D. Tex. 1992)....................................25

First Mun. Leasing Corp. v. Blankenship, Potts, Aikman, Hagin & Stewart, 648 S.W.2d 410 (Tex. App.—Dallas 1983, writ ref'd n.r.e.).........................25

Ghidoni v. Stone Oak, Inc., 966 S.W.2d 573 (Tex. App.—San Antonio 1998, pet. denied) ..................................................................................................39

Howe Inv., Ltd. v. Perez Y Cia. de Puerto Rico, Inc., 96 F.Supp.2d 106 (D. Puerto Rico 2000) ....................................................................................... 23

Huie v. DeShazo, 922 S.W.2d 920 (Tex.1996) .............................................. 18

In re A.L.S., 2006 WL 75369 (Tex. App.—Beaumont 2006, orig. proceeding) 20

In re Bennett, 2006 WL 2403319 (Tex. App.—Houston [14th Dist.] 2006, orig. proceeding) (mem. op.) ..................................................................... 20

In re Butler, 987 S.W.2d 221 (Tex. App.—Houston [14th Dist.] 1999, orig. proceeding) ........................................................................................... 44

In re Cap Rock Electric Co-op., Inc., 35 S.W.2d 222 (Tex. App.—Texarkana 2000, orig. proceeding) ................................................................... 35, 40

In re Chonody, 49 S.W.3d 376 (Tex. App.—Fort Worth 2000, no pet.) .......... 44

In re Dalco, 186 S.W.3d 660 (Tex. App.—Beaumont 2006, orig. proceeding) . 38

In re de Brittingham, 319 S.W3d 95 (Tex. App.— San Antonio 2010, orig. proceeding) ........................................................................................... 20

In re Disciplinary Proceedings Against Kostich, 2010 WI 136, 330 Wis. 2d 378, 793 N.W.2d 494 (2010) ................................................................. 23

In re Drake, 195 S.W3d 232 (Tex. App.—San Antonio 2006, orig. proceeding) ........................................................................................................ 20, 21

In re Gerry, 173 S.W.3d 901 (Tex. App. – Tyler 2005) ................................. 26

In re Hilliard, No. 13-05-223-CV, 2006 WL 1113512 (Tex. App.—Corpus Christi Apr. 27, 2006, pet. denied) ...................................................... 39

In re Interest of A.M., 974 S.W.2d 857 (Tex. App.—San Antonio 1998, no pet.) ........................................................................................................ 37

In re Martel, 2007 WL 43616 (Tex. App.—Tyler, 2007, orig. proceeding) 20, 38

In re McDaniel, No. 10-04-00166-CV, 2006 WL 408397 (Tex. App.—Waco 2006, orig. proceeding) ...................................................................... 38

In re Nitla S.A. de C.V., 92 S.W.3d 419 (Tex. 2002) ...................................... 38

In re Robinson, 90 S.W.3d 921 (Tex. App.—San Antonio 2002, orig. proceeding) ................................................................................20

In re Sandoval 2009 WL 4891949 (Tex. App.—San Antonio 2009, orig. proceeding) .............................................................................20, 38

In re Southwestern Bell Yellow Pages, Inc., 141 S.W.3d 229 (Tex. App.—San Antonio 2004, orig. proceeding) ...............................................39

In re TDFPS, 210 S.W.3d 609 (Tex. 2006) ....................................................18

In re Tyler Asphalt & Gravel Co., 107 S.W.3d 832 (Tex.App.—Houston [14th Dist.] 2003, orig. proceeding) ........................................................18

In re Users System Services, Inc., 22 S.W.3d 331 (Tex. 1999) .......................42

In re Vossdale Townhouse Ass'n, Inc., 302 S.W.3d 890 (Tex. App.—Houston [14th Dist.] 2009, orig. proceeding) ............................................................37

In re Works, 118 S.W.3d 906 (Tex. App.—Texarkana 2003, orig. proceeding) ...........................................................................................40

In re Yarn Processing v. Patent Validity Litig., 530 F.2d 83 (5th. Cir. 1976) 19

Insurance of America Agency Inc. v. Life Investors Insurance Company, 1997 WL 466529, No. 05-95-00923-CV (Tex.App.—Dallas 1997) .......................43

J.K. & Susie L. Wadley Research Inst. & Blood Bank v. Morris, 776 S.W.2d 271 (Tex. App.—Dallas 1989, orig. proceeding) ...............................21, 22, 34

Keith v. Solls, 256 S.W.3d 912 (Tex. App.— Dallas 2008, orig. proceeding) ..37

Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer, 904 S.W.2d 656 (Tex. 1995) ...................................................................................................41

Lopez v. Sandoval, 2006 WL 417326 (Tex. App.—Corpus Christi 2006, no pet.)(mem. op.) ...................................................................................20, 35

Metro. Life Ins. v. Syntek Fin. Corp., 881 S.W.2d 319 (Tex. 1994).....20, 22, 34

Milliken v. Grigson, 986 F.Supp. 426 (S.D. Tex. 1997)...................................37

N. Dak. St. B. Ass'n Ethics Comm., Op. 11-02, 2011 WL 1134640 (2011)......23

N.Y.C. B. Ass'n Comm. on Prof'l and Jud'l Ethics, Formal Op. 2006-2 (April 2006)........................................................................................................24

Nat'l Med. Enters, v. Godbey, 924 S.W.2d 123 (Tex.1996) (orig. proceeding)28, 42

NCNB Tex. Nat'l Bank v. Coker, 765 S.W.2d 398 (Tex. 1989) (orig. proceeding).............................................................................20, 34, 36, 37

Nolan v. Foreman, 665 F.2d 738 (5th Cir. 1982)................................................26

O Builders & Associates, Inc. v. Yuna Corp. of NJ, 206 N.J. 109, 19 A.3d 966 (2011)..........................................................................................................23

Parker v. Carnahan, 772 S.W.2d 151 (Tex. App.—Texarkana 1989, writ denied).......................................................................................................25

Roberts v. Healey, 991 S.W.2d 873 (Tex.App. —Houston [14 Dist.] 1999).....25

Schwartz v. Jefferson, 930 S.W.2d 957 (Tex. App.—Houston [14th Dist.] 1996, orig. proceeding) .........................................................................................44

Selby v. Revlon Consumer Products Corp., 6 F. Supp.2d 577 (N.D. Tex. 1997) ....................................................................................................................28

Simon v. Floyd, 1997 WL 30922 (Tex. App.—Beaumont 1997, no writ).........35

Smith v. Abbott, 311 S.W3d 62 (Tex. App.—Austin 2010, pet. denied)....20, 38

Spears v. Fourth Court of Appeals, 797 S.W.2d 654 (Tex. 1990) ..............37, 38

United States v. Aleman, No. CRIM. EP.-04-CR-1590 K, 2004 WL 1834602 (W.D. Tex. Aug. 12, 2004) ..........................................................................20

United States v. Marks, 949 S.W.2d 320 (Tex. 1997) ......................................41

Ussery v. Gray, 804 S.W.2d 232 (Tex. App.—Forth Worth 1991, no pet.)......39

Walker v. Packer, 827 S.W.2d 833 (Tex. 1992). ...............................................18

**Statutes**

Local Gov't Code § 143.089(f) ..........................................................................32

Local Gov't Code §§ 143.089, 143.1214...........................................................32

**Other Authorities**

2011 Meet and Confer Agreement, available at:
http://www.hpou.org/docs/meetandconfer.pdf (effective May 29, 2015) ...... 32

Open Records Decision No. 419 (2012) ........................................................... 32

Open Records Decision No. 562 at 6 (1990) .................................................. 32

PEC Op. 584 (2008) ................................................................... 28, 30, 31

PEC Op. 645 (2014) ............................................................................... 27

**Rules**

TEX. DISCIPLINARY R. PROF. CONDUCT 1.05 ........................................ 23, 31

TEX. DISCIPLINARY R. PROF. CONDUCT 1.05 cmt. 1 ................................... 26

TEX. DISCIPLINARY R. PROF. CONDUCT 1.05(b)(3) .................................... 31

TEX. DISCIPLINARY R. PROF. CONDUCT 1.06 .............................................. 27

TEX. DISCIPLINARY R. PROF. CONDUCT 1.06 cmt. 10 .................................. 40

TEX. DISCIPLINARY R. PROF. CONDUCT 1.06 cmt. 17 .................................. 19

TEX. DISCIPLINARY R. PROF. CONDUCT 1.09 ...................................... 20, 27, 43

TEX. DISCIPLINARY R. PROF. CONDUCT 1.09(a) ..................................... 27, 29

TEX. DISCIPLINARY R. PROF. CONDUCT 1.09(a)(1) ..................................... 30

TEX. DISCIPLINARY R. PROF. CONDUCT 1.09(a)(3) ............................... 22, 33, 37

**Treatises**

48 Robert P. Schuwerk et. al., Texas Practice: Texas Lawyer & Judicial
Ethics § 6:9 (2015 ed.) ....................................................... 23, 31, 42

Charles F. Herring, Jr., Texas Legal Malpractice and Lawyer Discipline §
4.33 (10th Ed. 2011) ............................................................... 19, 38

## STATEMENT OF THE CASE
### [TRAP 52.3(d)]

This mandamus proceeding involves a motion to disqualify Kim K. Ogg, R. Scott Poerschke, and The Ogg Law Firm, PLLC (hereinafter collectively referred to as "Ogg") from representing Officer Kimberley Trimmer-Davis (hereafter "Trimmer-Davis"). Defendant, The City of Houston (hereafter "The City"), moved to disqualify Ogg on the basis of an alleged conflict of interest involving an alleged former client of Ogg – Captain Dwayne Ready (hereafter "Ready."). (App.1.) Judge Caroline Baker granted Defendant's Motion to Disqualify. (App.3.) Trimmer-Davis seeks mandamus relief compelling Judge Baker to withdraw her order disqualifying Ogg and order her to deny the Motion to Disqualify.

The Respondent is Judge Caroline Baker of the 295th Judicial District Court of Harris County, Texas. On January 14, 2015, Judge Caroline Baker signed an order granting Defendant's Motion to Disqualify, which disqualified Kim K. Ogg and The Ogg Law Firm, PLLC from representing Trimmer-Davis. (App.3.) The order does not indicate any grounds for the disqualification nor does the order contain any findings.

The underlying action from which this original proceeding, Cause No. 2010-11410, is taken involves discrimination and retaliation committed by the City against Trimmer-Davis.

**STATEMENT OF JURISDICTION**
**[TRAP 52.3(e)]**

The Court has jurisdiction to issue a writ of mandamus in this case under article V, section 6 of the Texas Constitution, section 22.221(b) of the Texas Government Code, and rule 52 of the Texas Rules of Appellate Procedure.

## ISSUES PRESENTED
### [TRAP 52.3(f)]

Whether Judge Baker abused her discretion in granting the City's Motion to Disqualify Ogg.

Whether the City proved by clear and convincing evidence facts sufficient to disqualify Ogg.

Whether the City is entitled to a presumption that confidential information was shared between Ogg and Ready.

Whether the City has shown that the current matter involving Trimmer-Davis is adverse to Ready.

Whether there is a conflict of interest disqualifying Ogg from representing Trimmer-Davis under TEX. DISCIPLINARY R. PROF. CONDUCT Rule 1.09(a)(1).

Whether there is a conflict of interest disqualifying Ogg from representing Trimmer-Davis under TEX. DISCIPLINARY R. PROF. CONDUCT Rule 1.09(a)(2).

Whether there is a conflict of interest disqualifying Ogg from representing Trimmer-Davis under TEX. DISCIPLINARY R. PROF. CONDUCT Rule 1.09(a)(3).

Whether the City has shown actual prejudice.

Whether Ogg should still be disqualified even if the City has meet their burden to show a conflict of interest under TEX. DISCIPLINARY R. PROF. CONDUCT Rule 1.09.

## STATEMENT OF FACTS
### [TRAP 52.3(g)]

Only few days before trial in the underlying case from which this appeal is taken, Cause No. 2010-11410, the City filed on April 11, 2014 an "Emergency Motion to Disqualify" Ogg from representing Trimmer-Davis, the Plaintiff in that case. (App.1:001.)[1] In that motion, the City claimed that Ogg had a conflict of interest between her current client, Trimmer-Davis, the Plaintiff in Cause No. 2010-11410, and a former client, Ready. Both Ready and Trimmer-Davis were employed by Houston Police Department and Ready was Trimmer-Davis' supervisor when she was assigned to the Human Resources Division in the Houston Police Department. Ready did not intervene in the underlying suit, nor did he ever request disqualification of Ogg. (App.1:005.)

Based upon the City's Motion to Disqualify, on January 14, 2015, Judge Baker signed an Order disqualifying Ogg and The Ogg Law Firm, PLLC. The order only stated that "[u]pon consideration, the Court GRANTS Defendant City of Houston's Motion to Disqualify Counsel." (App.3.) The Order did not contain any findings. Id.

The basis for the City's motion involved a "preliminary consultation" between Ogg and Ready on September 4, 2008. (App.1:009.)[2] In 2008, Ready

---

[1] Trial was set for April 15, 2014, but later continued for reasons unrelated to the Motion to Disqualify.

[2] The City never established the date of Ready's consultation with Ogg. However, the date of consultation was likely to be September 4, 2008 as it was Ogg's standard policy to have prospective

was facing a 90 day suspension or termination from the City of Houston Police Department for failing to follow established procedure and general orders requiring him to submit work cards for approval of extra employment with the Great Midtown Management District. (App.2:018.) The City alleged that the 'preliminary consultation' constituted legal representation by Ogg of Ready.

In response to the City's Motion to Disqualify, Ogg filed an affidavit stating that she did not have any independent recollection of the events occurring during the "preliminary consultation." (App.1:008.)[3] Ready, in his affidavit attached to the City's Motion to Disqualify, indicated that he paid Ogg $250 a consultation. (App.1:008; App.2:008.) $250 was Ogg's standard charge for a one-hour consultation in 2008. (App.2.:008.) Based on Ogg's standard practice and the amount of Ready's check, Ogg inferred that the consultation lasted up to one hour and no longer. (App.2:009.) Ready did not seek further legal advice from Ogg and did not retain Ogg to represent him in his pending disciplinary matter against the City of Houston Police Department. (App.1:008; App.2:008-9.)

On September 11, 2008, a few days after the preliminary consultation

---

clients pay on the day of the consultation. (App:2:009.)

[3] In response to the City's Motion to Disqualify, Ogg did recall a report by Wayne Dolcefine, on Channel 13, regarding Ready and the issues surrounding his 90-day temporary suspension. (App.2:009.) Due to her knowledge of police practice and civil service laws, Ogg inferred that the purpose of the consultation involved advice on the arbitration appeal process. (App.2:010.)

with Ogg, Ready accepted a 90-day temporary suspension from Chief Harold L. Hurtt in lieu of termination. (App.2:017.) As explained by Chief Hurtt, on the face of the 90-day suspension letter, Ready opted for and was granted a 90-calendar day suspension in lieu of an indefinite suspension or termination. (App.2:021.) By agreeing of the 90-day suspension, Ready accepted the temporary suspension and retained his job with the Houston Police Department. (App.2:022); (App.2:013.)

Sometime thereafter, Ogg and Trimmer-Davis entered into a formal attorney-client relationship and Ogg began representing Trimmer-Davis in the underlying case, Cause No. 2010-11410, pending in the 295th Judicial District Court of Harris County, Texas with Judge Carolyn Baker presiding.

During discovery in Trimmer-Davis' case, Cause No. 2010-11410, the City produced Ready's September 11, 2008 90-day temporary suspension letter. (App.2:011.) The suspension letter was (and still is) clearly marked with the City's bates stamped numbers. (App.2:017.) Scott Poerschke, an associate attorney working with Ogg on the case, questioned various City witnesses about their knowledge of Ready's 90-day suspension. (App 1:012; App 1:016; App 1:023.)

Trimmer-Davis subpoenaed Ready for trial. Ready allegedly met with counsels for the City shortly before the trial date to discuss his testimony. (App.1:08.) Ready discovered, as alleged by the City, that Trimmer-Davis was

then represented by Ogg and not a former attorney of Trimmer-Davis that conducted his deposition back in 2011. (App.1:09.)

As of the date of filing of this motion, no trial date has been set by Judge Baker and the parties have not undertaken any further discovery in this matter since entry of the January 14, 2015 Order.

## ARGUMENT
## [TRAP 52.3(h)]

1.  **STANDARD OF REVIEW: ABUSE OF DISCRETION FOR LEGAL PRINCIPALS**

The factual issues underlying this case are not in dispute. This case rests upon legal principles.

In reviewing the trial court's determination of the legal principles underlying its ruling, the reviewing court is far less deferential than it is in reviewing the trial court's resolution of factual issues. Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992). When determining legal principles, the trial court has no discretion to misinterpret or misapply the law. Id. Thus, a clear failure to analyze or apply the law correctly constitutes an abuse of discretion. Id.; *see* In re TDFPS, 210 S.W.3d 609, 612 (Tex. 2006). A trial court's erroneous legal conclusion is an abuse of discretion, even if the law is unsettled. Huie v. DeShazo, 922 S.W.2d 920, 927-28 (Tex.1996); In re Tyler Asphalt & Gravel Co., 107 S.W.3d 832, 840 n.10 (Tex.App.—Houston [14th Dist.] 2003, orig. proceeding).

2.  **DISQUALIFICATION MUST BE BASED ON CLEAR AND CONVICING EVIDENCE**

As a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification or where an unethical "change of sides" is sufficiently manifest as to prompt the court to

disqualify counsel on its own motion. In re Yarn Processing v. Patent Validity Litig., 530 F.2d 83, 88 (5th. Cir. 1976). When the motion to disqualify is brought by an opposing party—and not a client—the burden to prove the conflict of interest is higher for the proponent of the motion. Here, the party requesting disqualification is not a client who is now a party to the underlying case. The City is not a former client of Ogg. The City alleges that Ready is a former client of Ogg, but Ready did not intervene in the underlying case nor did he request disqualification. The City has brought the Motion to Disqualify on its own behalf.

When the party raising the motion to disqualify is an opposing party, the judge should view the objections with "great caution." Charles F. Herring, Jr., Texas Legal Malpractice and Lawyer Discipline § 4.33 (10th Ed. 2011); TEX. DISCIPLINARY R. PROF. CONDUCT 1.06 cmt. 17 ("Such an objection should be viewed with great caution, however, for it can be misused as a technique of harassment."). The court should also consider any other evidence which indicates the motion is being filed not due to a concern that confidences "related to an attorney-client relationship may be divulged but as a dilatory trial tactic" because such objections are often used as a means of harassment. Herring, Jr., at §4.33. Recognizing the likelihood with which these rules may be abused by opposing parties, when a non-client litigant raises the issue of attorney disqualification, he must prove by clear and convincing evidence that

a conflict exists and that it will prejudice the fairness of the proceedings.[4] <u>In re Robinson</u>, 90 S.W.3d 921, 925 (Tex. App.—San Antonio 2002, orig. proceeding) ("[N]on-client litigants may move to disqualify opposing counsel, but must prove by clear and convincing evidence that conflict exists and that it will prejudice fairness of proceedings."); <u>United States v. Aleman</u>, No. CRIM. EP.-04-CR-1590 K, 2004 WL 1834602, at *2 n.6 (W.D. Tex. Aug. 12, 2004) (recognizing the clear and convincing standard when the motion to disqualify is brought by an adversary and not the former client).

A party seeking to disqualify an attorney under TEX. DISCIPLINARY R. PROF. CONDUCT 1.09 (Conflict of Interest: Former Client) must show that during the existence of the attorney-client relationship, factual matters were involved that are so related to the facts in the pending litigation that a genuine threat now exists that confidences revealed to a former attorney will be divulged to his present adversary. *See* <u>Metro. Life Ins. v. Syntek Fin. Corp</u>., 881 S.W.2d 319, 320–21 (Tex. 1994); <u>NCNB Tex. Nat'l Bank v. Coker</u>, 765 S.W.2d 398, 399–400 (Tex. 1989) (orig. proceeding). "Sustaining this burden

---

[4] *See also* Herring, Jr., at § 4.33 *citing* <u>In re de Brittingham</u>, 319 S.W3d 95, 98 (Tex. App.— San Antonio 2010, orig. proceeding); <u>Smith v. Abbott</u>, 311 S.W3d 62, 73 (Tex. App.—Austin 2010, pet. denied); <u>In re Sandoval</u> 2009 WL 4891949, at *1 (Tex. App.—San Antonio 2009, orig. proceeding); <u>In re Martel</u>, 2007 WL 43616, at *2 (Tex. App.—Tyler, 2007, orig. proceeding); <u>Cimarron Aric., Ltd. v. Guitar Holding Co., L.P.</u>, 209 S.W3d 197, 201 (Tex. App.—El Paso 2006, no pet); <u>In re Drake</u>, 195 S.W3d 232, 235 (Tex. App.—San Antonio 2006, orig. proceeding); <u>Lopez v. Sandoval</u>, 2006 WL 417326, at *1 (Tex. App.—Corpus Christi 2006, no pet.)(mem. op.); <u>In re Bennett</u>, 2006 WL 2403319, at *1 (Tex. App.—Houston [14th Dist.] 2006, orig. proceeding) (mem. op.); <u>In re A.L.S.</u>, 2006 WL 75369, at *4 (Tex. App.—Beaumont 2006, orig. proceeding).

requires evidence of specific similarities capable of being recited in the disqualification order." <u>Coker</u>, 765 S.W.2d at 400. The movant may not rely on conclusions, but must provide the trial court with sufficient information to allow it to engage in a "painstaking analysis" of the facts. <u>J.K. & Susie L. Wadley Research Inst. & Blood Bank v. Morris</u>, 776 S.W.2d 271, 278 (Tex. App.—Dallas 1989, orig. proceeding). The movant "must delineate with specificity the subject matter, issues, and causes of action presented in former representation." <u>Id</u>. However, superficial resemblances among issues do not rise to the level of a substantial relationship. <u>Morris</u>, 776 S.W.2d at 278; <u>Arkla Energy Res. v. Jones</u>, 762 S.W.2d 694, 695 (Tex. App.—Texarkana 1988, orig. proceeding).

An attorney's mere generalized knowledge of a client's "inner workings" in regard to selecting experts or fact witnesses, "preparing and responding to discovery requests, formulating defense strategies, trial preparation, and attending settlement conferences" do not constitute the required "specific factual similarities" between prior and subsequent representations. <u>In re Drake</u>, 195 S.W.3d 232, 236-37 (Tex. App.—San Antonio 2006, no pet).; *see also* <u>Capital City Church of Christ v. Novak</u>, No. 03-04-00750-CV, 2007 WL 1501095, at *5 (Tex. App.—Austin 2007, no pet). Further, a "substantial relationship" cannot be predicated upon the perceived risk of disclosure of facts that are common knowledge, within the public domain, or that have already

been provided to the present adversary. <u>Metro. Life Ins. Co.</u>, 881 S.W.2d at 321; <u>Morris</u>, 776 S.W.2d at 278.

As demonstrated below, the City did not met these exacting standards required to show, by clear and convincing evidence, that the relationship between Ogg and Trimmer-Davis was in conflict with Ready.

### 3. THE CITY IS NOT ENTITLED TO A PRESUMPTION THAT OGG RECEIVED CONFIDENTIAL INFORMATION FROM READY

Generally, if an attorney-client relationship is established, the movant in a motion to disqualify is entitled to a presumption that if the matters are substantially related under TEX. DISCIPLINARY R. PROF. CONDUCT 1.09(a)(3), then the movant is not required to disclose what specific confidences were exchanged between the lawyer and the former client that the lawyer might use to the disadvantage to the former client. However, if an attorney-client relationship does not exist, then the movant is required to disclose the specific confidences exchanged in order to justify disqualification of the lawyer. Here, because no attorney-client relationship existed between Ready and Ogg, the City was required to establish with some specificity the specific confidences exchanged between them.

"[T]he Texas Rules do not subject an attorney to discipline for disclosing or using the information imparted in such preliminary consultations when the lawyer is not retained." 48 Robert P. Schuwerk et. al., <u>Texas Practice: Texas</u>

Lawyer & Judicial Ethics § 6:9 (2015 ed.) (citing TEX. DISCIPLINARY R. PROF.

CONDUCT 1.05(a), (b) (referring only to present and former clients)). "Moreover,

case law elsewhere has taken the view that it is inappropriate to presume

conclusively that a lawyer who engaged in preliminary consultations with a

putative client concerning a matter received confidential information

concerning that matter." Id. (citing Howe Inv., Ltd. v. Perez Y Cia. de Puerto

Rico, Inc., 96 F.Supp.2d 106, 110 (D. Puerto Rico 2000); O Builders &

Associates, Inc. v. Yuna Corp. of NJ, 206 N.J. 109, 19 A.3d 966, 978–79 (2011)).

"Instead, they have concluded that the appropriate balance of competing public

policies is best struck by requiring the erstwhile client to establish with some

specificity that such confidences were imparted to the lawyer whose

disqualification is sought *and* that those confidences could be used to the

movant's disadvantage in the matter at hand." Id.[5]

---

[5] *See also* Schuwerk, at 6:9 *compare* Cascades Branding Innovation, LLC v. Walgreen Co., 2012 WL 1570774 (N.D. Ill. 2012) (not reported in F.Supp.2d) (movant demonstrated that it revealed information to counsel sought to be disqualified during prior consultation that could be significantly harmful to its subsidiary in litigation brought by other counsel, but in which counsel sought to be disqualified was representing opposing party); B.F. Goodrich Co. v. Formosa Plastics Corp., 638 F. Supp. 1050, 1052–53 (S.D. Tex. 1986) (disqualification appropriate "if, but only if, [movant] can prove that the firm actually received confidential information which could now be used to the detriment of [movant]"); In re Disciplinary Proceedings Against Kostich, 2010 WI 136, 330 Wis. 2d 378, 793 N.W.2d 494 (2010) (lawyer who consulted with alleged sexual abuse victim about bringing civil suit against alleged perpetrator and acquired significant confidential information about alleged victim in the course of doing so, but who declined to represent alleged victim because he believed that statute of limitations had expired on her claim, could not thereafter agree to represent alleged perpetrator in subsequent criminal proceeding involving same alleged conduct, and was subject to discipline for having done so) *with* N. Dak. St. B. Ass'n Ethics Comm., Op. 11-02, 2011 WL 1134640 (2011) (lawyer who consulted with alleged victim of sexual abuse but, immediately upon being advised of identity of alleged perpetrator, terminated consultation without having discovered any confidential information concerning alleged victim because that alleged perpetrator was a close personal friend, was not disqualified from representing accused in subsequent administrative and criminal proceedings

Here, no attorney-client relationship existed between Ogg and Ready. In Ready's affidavit filed with the City's Motion to Disqualify, Ready refers to the September 4, 2008 meeting with Ogg as a consultation. "In September 2008, I consulted with Ms. Ogg . . ." (App.1:008.) Without more, a consultation does not create an attorney-client relationship even if the prospective client paid for the consultation. *See* Banc One Capital Partners Corp. v. Kniepper, 67 F.3d 1187, 1198 (5th Cir. 1995) (Although the attorney-client relationship can be implied, courts will not readily impute the contractual relationship absent a sufficient showing of intent.); American Mortg. Sec. Funding Corp. v. First Louisiana Federal Sav. Bank, 1988 U.S. Dist. LEXIS 9576,9 (E.D. La. 1988) (A consultation about possible representation did not, by itself, establish the existence of an attorney-client relationship); B.F. Goodrich Co., 638 F. Supp. at 1052 (finding no implied attorney-client relationship where it was clear during an initial interview that the purported client was reserving the right to make a decision as to whether to retain the lawyer). There is no attorney-client

---

growing out of alleged molestation); N.Y.C. B. Ass'n Comm. on Prof'l and Jud'l Ethics, Formal Op. 2006-2 (April 2006) (concluding (1) a law firm taking part in a "beauty contest" without ultimately being chosen to represent prospective client may later accept the representation of a client who is adverse to the holder of the contest in a substantially related matter if the lawyers participating in the beauty contest presentation are screened from all involvement in the matter and apportioned no part of the fee it generates, and (2) all firm lawyers may participate in the adverse representation, including those involved in the "beauty contest," if either (a) the beauty contest lawyers did not learn any confidences or secrets; (b) those lawyers obtained an advance waiver before participating; (c) any confidences or secrets those lawyers may have learned would not be significantly harmful to the holder of the beauty contest in the subsequent adverse representation, or (d) any confidences or secrets those lawyers may have learned were imparted to them for the purpose of disqualifying the firm from any subsequent adverse representation).

relationship absent a showing of privity of contract. *See also* <u>Parker v. Carnahan</u>, 772 S.W.2d 151, 156 (Tex. App.—Texarkana 1989, writ denied); <u>First Mun. Leasing Corp. v. Blankenship, Potts, Aikman, Hagin & Stewart</u>, 648 S.W.2d 410, 413 (Tex. App.—Dallas 1983, writ ref'd n.r.e.); <u>F.D.I.C. v. Howse</u>, 802 F.Supp. 1554, 1563 (S.D. Tex. 1992); <u>Roberts v. Healey</u>, 991 S.W.2d 873 (Tex.App. —Houston [14 Dist.] 1999) (simply engaging in conversation about a divorce would not constitute an agreement to enter an express or implicit attorney-client relationship). The City offered no evidence to demonstrate that there was privity of contract between Ogg and Ready with respect to the creation of an attorney-client relationship. That evidence simply does not exist.

Thus, because Ready decided not to retain Ogg to represent him in negotiations with Chief Hurtt or in any appeal of his 90-day temporary suspension, the Texas Disciplinary Rules do not subject Ogg to discipline. Yet, this does not end the inquiry. Ogg is not absolved of all responsibility to Ready. Ogg might still be disqualified if Ready gave confidential information to Ogg and Ogg later attempted to use that confidential information against him. Texas law is clear that "a lawyer must preserve the confidences and secrets of one who has 'sought to employ him.'" <u>B.F.Goodrich</u>, 638 F. Supp at 1052. The Texas Disciplinary rules clearly state that a fiduciary relationship existing between lawyer and client . . . require preservation by the lawyer of

confidential information of one who has employed *or sought to* employ the lawyer. TEX. DISCIPLINARY R. PROF. CONDUCT 1.05 cmt. 1 (emphasis added). Likewise, a fiduciary relationship between an attorney and his client extends even to preliminary consultations between the client and the attorney regarding the attorney's possible retention. Nolan v. Foreman, 665 F.2d 738, 739 (5th Cir. 1982) (*citing* Braun v. Valley Ear, Nose, and Throat Specialists, 611 S.W.2d 470 (Tex.Civ.App.-Corpus Christi 1980, no writ.)).

However, if the City had shown that the matters (this underlying lawsuit and Ready's disciplinary situation were "substantially related," the City would have been entitled to a presumption that Ogg obtained Ready's confidential information. Instead, in order to disqualify Ogg, the City was required to disclose and establish with specificity the actual confidences Ogg learned from Ready and how those confidences could be used to Ready's disadvantage. *See* In re Gerry, 173 S.W.3d 901 (Tex. App. – Tyler 2005) (mandamus denied on the basis that it was proven at trial that the lawyer received confidential information). The City failed to show (1) what confidential information Ready disclosed to Ogg and (2) how Ogg could have used those confidences against Ready. The City failed to satisfy their burden, and Judge Baker abused her discretion in sustaining the City's motion without requiring the City prove

these elements by clear and convincing evidence.[6]

### 4. OGG'S REPRESENTATION OF TRIMMER-DAVIS IS NOT "ADVERSE" TO READY (WITHIN THE MEANING OF RULE 1.09(a))[7]

If this Court were to find the existence of an attorney-client relationship between Ready and Ogg, the next step is to turn to the grounds contained in TEX. DISCIPLINARY R. PROF. CONDUCT 1.09 and determine whether the City has established any of these by clear and convincing evidence. As a threshold matter, each ground for disqualification is predicated upon a finding that Ogg's representation of Trimmer-Davis was "adverse" to Ready. TEX. DISCIPLINARY R. PROF. CONDUCT 1.09, as specifically found in subsection (a), requires the City to show that Ogg's representation of Trimmer-Davis was "adverse" to Ready. However, nothing this section and in remaining sections that follow discussing the applicability TEX. DISCIPLINARY R. PROF. CONDUCT 1.09 shall be

---

[6] The City argued that they were not required to show that confidential information was exchanged between Ogg and Ready at the September 4, 2008 primary consultation. City argued that "they assert the Defendants have the burden to show she possesses confidential information which is prejudicial to Captain Ready by specifically identifying the confidential information. In other words Captain Ready should be required to disclose any confidential information he provided to Ms. Ogg as precondition to asserting she may not use this information to the advantage of a different client." (App 4:006-7.) The City claimed that there was no authority for this position.

[7] The City argued in their Motion to Disqualify that TEX. DISCIPLINARY R. PROF. CONDUCT 1.06 is also applicable to the facts of the instant case. However, Ready is not a current client of Ogg. TEX. DISCIPLINARY R. PROF. CONDUCT 1.06 does not apply because it only applies to current clients. "In the situation here considered, if the lawyer had in the past represented the creditor, but did not currently represent the creditor in any matter, . . . Rule 1.09, rather than Rule 1.06 of the Texas Disciplinary Rules of Professional Conduct would have to be considered." PEC Op. 645 (2014).

construed as waiving Trimmer-Davis' previous assertions that Ready was not a former client of Ogg and that the City failed to show the specific confidences exchanged between them.

"Whether the matter is adverse to former client . . . and therefore Rule 1.09(a) is applicable will depend upon the likelihood and degree to which the current representation may result in legal, financial, or other identifiable harm." *See* PEC Op. 584 (2008). There must be some demonstration that the second representation is "adverse" to the former client. Id.; TEX. DISCIPLINARY R. PROF. CONDUCT 1.09(a.) For purposes of the ethical prohibition of Rule 1.09, adversity has been described as "a product of the likelihood of the risk and the seriousness of its consequences." Nat'l Med. Enters, v. Godbey, 924 S.W.2d 123, 132 (Tex.1996) (orig. proceeding). "Applying this test, the Court [in Godbey] disqualified a law firm from representing patients in a lawsuit against a company that operated psychiatric hospitals because a lawyer in the firm had previously represented the defendant company's regional hospital administrator during an investigation of the company. Even though the administrator was not a party to the current suit, the Court held that the interests of the law firm's current clients were adverse to the former client's interests because the litigation posed a small risk of leading to criminal or civil proceedings against the former client." PEC Op. 584 (2008) (*citing* Selby v. Revlon Consumer Products Corp., 6 F. Supp.2d 577 (N.D. Tex. 1997)

(representation of current client in sexual harassment suit was materially adverse to former client, whose testimony in current client's case could expose her to defamation claims and damage her business reputation.)).

Here, based on the allegations contained in the disqualification motion and the evidence presented in support of it, the consequences to Ready of any disclosures arising from Ogg's representation of Trimmer-Davis cannot be presumed to be adverse or serious to Ready. The City speculations regarding the use of Ready's 90-day temporary suspension as impeachment evidence at trial, even if accepted as true, are not adverse to Ready within the meaning of TEX. DISCIPLINARY R. PROF. CONDUCT 1.09(a). (App.1:002.) Additionally, Ready accepted full responsibility for his actions giving rise to the 90-day temporary suspension and also accepted responsibility for any adverse consequences, either civil or criminal, resulting from the suspension. (App.2:022.) Even if Ogg used the 90-day temporary suspension at trial (assuming that Judge Baker would allow the evidence to be presented to the jury), no evidence existed to show that it would subject Ready to any further civil or criminal damage. By accepting full responsibility for his actions, by taking a full 90-day suspension in lieu of termination, the damage to Ready, if any, has already been done.[8]

---

[8] Contrast this case with an example provided by the Texas Center for Legal Ethics. "For example, such a probability would normally exist in the circumstances here considered if C admitted drug abuse to Lawyer in the course of Lawyer's earlier representation of C and Client in the subsequent matter

**5. OGG'S REPRESENTATION OF TRIMMER-DAVIS DOES NOT QUESTION THE VALIDITY OF PRIOR WORK PERFORMED BY OGG FOR READY (WITHIN THE MEANING OF RULE 1.09(a)(1))**

The next ground for disqualification under TEX. DISCIPLINARY R. PROF. CONDUCT 1.09(a)(1) provides that Ogg may be disqualified if "other person questions the validity of the lawyer's services or work product for the former client." Here, Trimmer-Davis does not question the validity of Ogg's services, if any, provided to Ready. Likewise, Ogg's representation of Trimmer-Davis does not involve the validity of prior work by Ogg for Ready within the meaning of TEX. DISCIPLINARY R. PROF. CONDUCT 1.09(a)(1). TEX. DISCIPLINARY R. PROF. CONDUCT 1.09(a)(1) is not applicable to the facts of the instant case.

**6. A REASONABLE PROBABILITY DOES NOT EXIST (WITHIN THE MEANING OF RULE 1.09(a)(2)) THAT OGG'S REPRESENTATION OF TRIMMER-DAVIS WOULD CAUSE OGG TO VIOLATE OBLIGATIONS OF CONFIDENTIALITY OWED TO READY UNDER RULE 1.05**

The next ground for disqualification under TEX. DISCIPLINARY R. PROF. CONDUCT 1.09(a)(2) provides that Ogg may be disqualified "if the representation in reasonable probability will involve a violation of Rule 1.05." Here, a reasonable probability does not exist that Ogg's representation of Trimmer-Davis would cause Ogg to violate obligations of confidentiality owed

---

sought modification of the child custody order based in part on allegations concerning C's character." PEC Op. 584 (2008).

to Ready under DISCIPLINARY R. PROF. CONDUCT 1.05.

TEX. DISCIPLINARY R. PROF. CONDUCT 1.09(a)(2) suggests an attorney withdraw from representation "if the representation in reasonable probability will involve a violation of Rule 1.05." TEX. DISCIPLINARY R. PROF. CONDUCT 1.09(a)(2). Rule 1.05 addresses confidential information from a client. Id. at 1.05.

"[T]he law only allows a lawyer to make adverse use of a former client's confidential information if it has become generally known since the lawyer acquired it." Schuwerk, at § 6:9 (citing TEX. DISCIPLINARY R. PROF. CONDUCT 1.05(b)(3) (allowing a lawyer to use confidential information of a former client to that person's disadvantage after that representation has been concluded, "if the confidential information has become generally known"). Likewise, "Rule 1.05(b)(3) generally prohibits a lawyer from using confidential information of a former client to the disadvantage of the former client after the representation is concluded unless the former client [1] consents after consultation or [2] the confidential information has become generally known." PEC Op. 584 (2008).

Here, Ready has not consented to disclosure. However, any confidential information that was exchanged between Ready and Ogg became "generally known" within the meaning of TEX. DISCIPLINARY R. PROF. CONDUCT 1.05(b)(3). Ready's 90-day temporary suspension letter, as well as investigatory file of the

Internal Affairs Department, are public records held by the City. (App.2:011.)[9]

Ready accepted full responsibility for his actions publicly when he accepted, rather than challenged, the City's disciplinary sanction against him. (App.2:022.) Ready's actions and the City's suspension of Ready were reported by Wayne Dolcefino in the news media in 2008. (App.2:009.) Thus, if Ready disclosed any confidential information to Ogg, none of that information remained confidential. It became public information when Ready accepted his suspension and retained his job with the City.

### 7. OGG'S REPRESENTATION OF TRIMMER-DAVIS IS NOT THE "SAME" (WITHIN THE MEANING OF RULE 1.09(a)(3)) AS THE MATTER INVOLVING READY

---

[9] Although the City marked Ready's suspension letter with the words "confidential" at the bottom when they produced it in discovery, it, as well as all investigatory materials relating to Ready's suspension, are not confidential under Section 143.089 and 143.1214 of the Local Government Code. *See* Local Gov't Code §§ 143.089, 143.1214. The 2011 Meet and Confer Agreement likewise provides disclosure once a court has determined that the records are relevant to the pending matter and a protective order has been signed. Ogg only received a copy of Ready's September 11, 2008 90-day temporary suspension letter in discovery. (App.2:010; App.2:017-022.) Ogg did not receive a copy the investigatory materials.

In further support of the above, the Texas Attorney General clearly holds that all investigatory materials in a case resulting in disciplinary action are "from the employing department" when they are held by or are in the possession of the department because of its investigation into a police officer's misconduct, and the department must forward them to the civil service commission for placement in the civil service personnel file. Abbott v. Corpus Christi, 109 S.W.3d 113,122 (Tex. App.—Austin 2003, no pet.) Such records may not be withheld under section 552.101 of the Government Code in conjunction with section 143.089 of the Local Government Code. *See* Local Gov't Code § 143.089(f); Open Records Decision No. 562 at 6 (1990); Open Records Decision No. 419 (2012).

Additionally, Article 31, section 12, 2011 Meet and Confer Agreement states "In any cause of action, civil or criminal, no file, or any party thereof, maintained pursuant to § 143.089(g) shall be released to any party to the action until relevancy is judicially determined and an application for a protective order limiting the use of such file in that cause of action has filed." 2011 Meet and Confer Agreement, available at: http://www.hpou.org/docs/meetandconfer.pdf (effective May 29, 2015).

The next ground for disqualification under TEX. DISCIPLINARY R. PROF. CONDUCT 1.09(a)(3) provides that Ogg may be disqualified if the former representation is the "same" as the current representation. Here, Ready's matter involved a 90-day temporary suspension. Trimmer-Davis' current matter involves relation and discrimination. Ogg's representation of Trimmer-Davis not the "same" (within the meaning of TEX. DISCIPLINARY R. PROF. CONDUCT 1.09(a)(3)) as the matter involving Ready.

## 8. OGG'S REPRESENTAITON OF TRIMMER-DAVIS IS NOT "SUBSTANTIALY RELATED" TO READY'S 90-DAY TEMPORARY SUSPENSION (WITHIN THE MEANING OF RULE 1.09(a)(3))

The next ground for disqualification under TEX. DISCIPLINARY R. PROF. CONDUCT 1.09(a)(3) provides that Ogg may be disqualified if the former representation is "substantially related" to the current representation. Here, Ogg's representation of Trimmer-Davis is not "substantially related" to Ready's 90-day temporary suspension

The City failed to establish that a single factual matter Ogg may have learned from Ready during his 'preliminary consultation' was related to the facts in Trimmer-Davis' case sufficient to create a genuine threat that Ready's confidences will be divulged to a present adversary..[10] *See* Metro. Life Ins., 881

---

[10] Ready and Trimmer-Davis are not adversaries in terms of parties against each other in the same litigation. The City and Trimmer-Davis are adversaries.

S.W.2d at 320–21; <u>Coker</u>, 765 S.W.2d at 399–400. "Sustaining this burden requires evidence of specific similarities capable of being recited in the disqualification order." <u>Coker</u>, 765 S.W.2d at 400The movant may not rely on conclusions, but must provide the trial court with sufficient information to allow it to engage in a "painstaking analysis" of the facts. <u>Morris</u>, 776 S.W.2d at 278. The movant "must delineate with specificity the subject matter, issues, and causes of action presented in former representation." <u>Id</u>. Superficial resemblances among issues do not rise to the level of a substantial relationship. <u>Morris</u>, 776 S.W.2d at 278; <u>Arkla Energy</u>, 762 S.W.2d at 695.

A "substantial relationship" cannot be predicated on the perceived risk of disclosure of facts that are common knowledge, within the public domain, or that have already been provided to the present adversary. <u>Metro. Life Ins. Co.</u>, 881 S.W.2d at 321; <u>Morris</u>, 776 S.W.2d at 278. Here, the information Ready gave Ogg, if any, regarding the 90-day temporary suspension became public information, ie. common knowledge long before Trimmer-Davis filed suit against the City. Accordinly, the City disclosed Ready's 90-day suspension in discovery in Trimmer-Davis' case, having made the document public by filingit in Ready's civil service file in 2008. (App.2:011.)

The Supreme Court of Texas upheld the denial of disqualification where the supposedly confidential information provided to the challenged attorney was readily available in public. <u>Metro. Life Ins. Co.</u>, 881 S.W.2d at 321.

Similarly, in <u>In re Cap Rock Electric Co-op., Inc.</u>, 35 S.W.2d 222, 231 (Tex. App.—Texarkana 2000, orig. proceeding), the court upheld the denial of a motion to disqualify because the record did not demonstrate how any confidential information imparted to the attorney by his former client could be detrimental to the former client's interest in the subsequent litigation. Likewise, in <u>Lopez v. Sandoval</u>, 2006 WL 417326, at *3 (Tex. App.—Corpus Christi 2006 no. pet), the trial court denied a motion to disqualify and the appellate court reasoned, "While [plaintiffs] are not required to divulge the confidences discussed with the lawyer, [they are] required to make a general showing that some confidences which would relate to [the present case] were discussed." (Emphasis added.) The Beaumont Court of Appeals also upheld the denial of a motion to disqualify because there was no evidence that the lawyer and former client shared any confidences about whether the property at issue in the pending case had anything to do with the previous case. <u>Simon v. Floyd</u>, 1997 WL 30922, at *2 (Tex. App.—Beaumont 1997, no writ) (not designated for publication) (requiring showing of "actual prejudice" under Rule 1.09 challenge). The El Paso Court of Appeals held there was no evidence of any exposure of any confidences by defendant to his lawyers in other litigation which would enhance plaintiff's posture in its suit against defendant, or undermine defendant's position in this suit. <u>Conoco v. Baskin</u>, 803 S.W.2d 416, 422 (Tex. App.—El Paso 1991, no writ).

The sparse "evidence" presented by the City does not even come close to meeting such exacting standards. At most, it shows a meeting between Ogg and a prospective client about matters that were later disclosed to the public. Ogg's affidavit suggested that the meeting with Ready likely included the possibility of appealing the discipline, but Ready did not retain Ogg to represent him in negotiations with the Chief, nor did he appeal the 90-day temporary suspension. Ready accepted the suspension in lieu of termination. (App.2:022.) There is no indication that Ogg and Ready exchanged any confidences or any facts that could remotely be considered confidential. None of the witnesses deposed by Scott Poerschke referred to any confidences or evidence about Ready that was not already public information and knowledge. (App 1:012; App 1:016; App 1:023.)

Additionally, Judge Baker failed to cite any specific similarities between this case and Ogg's prior consultation with Ready. The Texas Supreme Court is clear that "sustaining this burden [of substantial relationship] requires evidence of specific similarities capable of being recited in the disqualification order." Coker, 765 S.W.2d at 400. Likewise, "[t]he vagueness of the court's order indicates that the substantial relationship test was not used; had it been, the court should have been able to state without difficulty the precise factors establishing a substantial relationship between the two representations." Id. Here, Judge Baker did not cite any specific similarities between the two

matters sufficient to show a "substantial relationship" to merit disqualification under TEX. DISCIPLINARY R. PROF. CONDUCT 1.09(a)(3). Judge Baker's disqualification order makes no mention of any basis for Ogg's disqualification. Thus, as Coker infers, Judge Baker did not utilize the substantial relationship test to disqualify Ogg because the specific similarities would have been outlined in her Order.

### 9. THE CITY HAS FAILED TO SHOW "ACTUAL PREJUDICE"

The party seeking to disqualify an attorney bears the burden of proving that disqualification is warranted. Coker, 765 S.W.2d at 400; Milliken v. Grigson, 986 F.Supp. 426 (S.D. Tex. 1997). Absent a compelling reason, a court should not deprive litigants of a right to be represented by counsel of choice because such deprivation can result in immediate and palpable harm. In re Vossdale Townhouse Ass'n, Inc., 302 S.W.3d 890, 893 (Tex. App.—Houston [14th Dist.] 2009, orig. proceeding). Therefore, mere allegations of unethical conduct or evidence showing a remote possibility of a violation of the disciplinary rules will not suffice to merit disqualification. Keith v. Solls, 256 S.W.3d 912, 917-918 (Tex. App.— Dallas 2008, orig. proceeding) (citing Spears v. Fourth Court of Appeals, 797 S.W.2d 654, 656 (Tex. 1990)). Nor is evidence showing a possible future violation will not be sufficient to disqualify counsel. In re Interest of A.M., 974 S.W.2d 857, 864 (Tex. App.—San Antonio 1998, no pet.). Rather, "the movant must establish with specificity a violation of one or

more of the disciplinary rules." Herring, Jr., at § 4.33 (citing <u>Spears</u>, 797 S.W.2d at 656); *accord* <u>In re Sandoval</u>, 2009 WL 4891949, at \*1 (Tex. App.—San Antonio 2009, orig. proceeding); <u>In re Martel</u>, 2007 WL 43616, at \*2 (Tex. App.—Tyler, 2007, orig. proceeding); <u>Cimarron Arig., Ltd. v. Guitar Holding Co.</u>, L.P. 209 S.W.3d 197, 201 (Tex. App.—El Paso 2006, no pet.). "In considering a motion to disqualify opposing counsel, the trial court must strictly adhere to an exacting standard to discourage a party from using the motion as a dilatory trial tactic." <u>In re Nitla S.A. de C.V.</u>, 92 S.W.3d 419, 422 (Tex. 2002). To prevent misuse of the rule on disqualification of an opposing counsel, the party seeking disqualification must demonstrate actual prejudice to itself resulting from the opposing lawyer's service in dual roles and violations of a disciplinary rule. <u>In re Nitla</u>, 92 S.W.3d at 422; <u>Ayres v. Canales</u>, 790 S.W.2d 554, 558 (Tex. 1990) (orig. proceeding). In a case involving a motion to disqualify under Rule 1.10, a court held that "'[e]ven if a lawyer violates a disciplinary rule, the party requesting disqualification must demonstrate that the opposing lawyer's conduct caused actual prejudice that requires disqualification.'" <u>Smith</u>, 311 S.W.3d at 73 (citing <u>In re Nitla</u>); *see also* <u>In re McDaniel</u>, No. 10-04-00166-CV, 2006 WL 408397, at \*3 (Tex. App.—Waco 2006, orig. proceeding) (applying the <u>Nitla</u> standard of showing "actual prejudice" where disqualification was premised on Rule 1.09); <u>In re Dalco</u>, 186 S.W.3d 660, 668 (Tex. App.—Beaumont 2006, orig. proceeding) (applying <u>Nitla</u> in a

conflict of interest challenge); In re Southwestern Bell Yellow Pages, Inc., 141 S.W.3d 229, 232 (Tex. App.—San Antonio 2004, orig. proceeding) (applying Nitla to a Rule 1.06 conflict challenge) (emphasis added). The mere allegation of potential prejudice is insufficient to warrant the extreme remedy of disqualification. Id.; Ghidoni v. Stone Oak, Inc., 966 S.W.2d 573, 579 (Tex. App.—San Antonio 1998, pet. denied).

In Ussery v. Gray, 804 S.W.2d 232, 237 (Tex. App.—Forth Worth 1991, no pet.), the court determined a prior attorney-client relationship existed and the two suits at issue were substantially related. However, the motion was denied because the disqualification proponent did not demonstrate actual prejudice. Id. Likewise, in In re Hilliard, the court denied a motion to disqualify a lawyer in a spousal support case, in part because there was no showing of actual prejudice resulting from the attorney's prior representation of the former client in a grievance proceeding. In re Hilliard, No. 13-05-223-CV, 2006 WL 1113512, at *3-4 (Tex. App.—Corpus Christi Apr. 27, 2006, pet. denied) (motion to disqualify premised on Rule 1.09). While the attorney in question may have expressed his personal opinions in a previous action, those opinions were not "confidences" that would ultimately prejudice either party. Id. at *4.

In In re Works, the court recognized the absence of prejudice because the information allegedly revealed by one client would have been revealed to the other. In re Works, 118 S.W.3d 906, 909 (Tex. App.—Texarkana 2003, orig.

proceeding). Because the two adverse parties had previously been on the same side in litigation, the court wrote that "there is no threat that 'confidences that were revealed to the former attorney will be revealed by that attorney to its present adversary.'" Id. at 909 (quoting In re Cap Rock, 35 S.W.3d at 230). The information that was supposedly a "confidence" in In re Works was already known by both parties in the challenged case. Id. In such instances, no prejudice can be shown.

TEX. DISCIPLINARY R. PROF. CONDUCT 1.06 cmt. 10 contemplates this problem and requires a showing of prejudice. The comment states:

> Rule 3.08 sets out a disciplinary standard and is not well suited to use as a standard for procedural disqualification. . . . A lawyer may represent parties having antagonistic positions on a legal question that has arisen in different cases, unless representation of either client would be adversely affected. Thus, it is ordinarily not improper to assert such positions in cases pending in different trial courts, but it may be improper to do so in cases pending at the same time in an appellate court.

TEX. DISCIPLINARY R. PROF. CONDUCT 1.06 cmt. 9, 10. Comment 10 requires the City to demonstrate that they would be "adversely affected" by showing prejudice. Id.

Here, the City offered no evidence establishing actual prejudice to Ready. Ready's affidavit is devoid of a single articulable fact that demonstrates harm. In fact, the City's only complaint involves the potential use by Trimmer-Davis of Ready's 90-day temporary suspension as impeachment evidence at trial.

However, while referenced in the body of their Motion to Disqualify, no evidence was presented by the City to support prejudice. It is well settled that statements and allegations contained in pleadings are not evidence. *See* United States v. Marks, 949 S.W.2d 320, 326 (Tex. 1997) ("[A]n attorney's unsworn statements are not evidence...."); Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer, 904 S.W.2d 656, 660 (Tex. 1995) ("Generally, pleadings are not competent evidence, even if sworn or verified."). As such, the City failed to meet their burden by clear and convincing evidence, and their Motion to Disqualify should have failed as a matter of law. Moreover, Ready's 90-day temporary suspension was public information and commonly known. As a result of the suspension, Ready retained his job with the City. All of this was reported in the news. The City even produced Ready's 90-day temporary suspension in discovery. These matters cast suspicion upon the City's reason for filing the motion – not out of any concern for Ready, but as a procedural vehicle to disqualify Ogg and obtain an unfair advantage over Trimmer-Davis at trial by requiring her to procure new counsel prior to the matter being tried to a jury.

10. **EVEN IF OGG IS DISQUALIFIED UNDER THE RULES FROM REPRESENTING TRIMMER-DAVIS, PUBLIC POLICY DOES NOT WARRANT DISQUALIFICATION IN THIS CASE**

The Texas Supreme Court has repeatedly observed that "[t]he Texas

Disciplinary Rules of Professional Conduct do not determine whether counsel is disqualified in litigation, but they do provide guidelines and suggest the relevant considerations." Godbey, 924 S.W.2d at 132. In In re Users System Services, the Texas Supreme Court also noted:

> As we said recently in In re Epic Holdings, Inc., "[w]e have repeatedly observed that '[t]he Texas Disciplinary Rules of Professional Conduct do not determine whether counsel is disqualified in litigation, but they do provide guidelines and suggest the relevant considerations.'" Technical compliance with ethical rules might not foreclose disqualification, and by the same token, a violation of ethical rules might not require disqualification.

In re Users System Services, Inc., 22 S.W.3d 331, 334 (Tex. 1999) (footnote omitted).[11] In Burt Hill, Inc. v. Hassan, No. Civ. A. 09-1285, 2010 WL 419433 (W.D. Pa. 2010) (not reported in F.Supp.2d), a lawyer who supposedly received opposing party's confidential documents from an anonymous source on several occasions could have been disqualified for doing so, but as a lesser sanction would instead be prohibited from using any of the information that he received or seeking it in subsequent discovery.

In the instant case, the alleged confidential information shared between

---

[11] "Because the Texas Rules are standards of discipline only, and so not necessarily suited to serve as standards for disqualification of counsel, both the Preamble and the commentary to various of these Rules cautioned courts to consider the full range of policy issues applicable to such motions, and not to apply the disciplinary rules blindly in determining them. In addition, various comments to these Rules also reminded courts of the wellknown fact that motions to disqualify counsel are often filed purely for tactical reasons, even though there is no substantial likelihood that the moving party could be unfairly prejudiced by the continued representation of an opposing party by the attorneys it wishes to disqualify. For this reason, too, these comments cautioned against a 'Caesar's wife' approach to motions to disqualify counsel." Schuwerk, at § 6:9 (citations omitted).

Ogg and Ready is immaterial to Trimmer-Davis' case.[12] Ogg indicated in her affidavit that the purpose of using Ready's 90-day temporary suspension was to show bias against Trimmer-Davis by Internal Affairs Investigators ("IAD") who investigated her discipline. (App.2:013.)[13] But, bias may be shown by a multitude other means that do not raise TEX. DISCIPLINARY R. PROF. CONDUCT RULE 1.09 concerns. With this in mind, Ogg previously argued that an appropriate remedy in this cause would be to exclude any evidence of Ready's 90-day suspension and prohibit Ogg from questioning witnesses about it at trial. (App.2:013 – 14.) This would have the effect of allowing Ogg to continue to represent Trimmer-Davis while at the same time protecting Ready from any possible disclosure of confidences expressed to Ogg about his situation. By bringing up this option, Trimmer-Davis does not waive any of her previous arguments.

Additionally, this is a case involving very specialized knowledge relating to the policies and procedures of the Houston Police Department. As a former employee of the City well-versed in the employment practices of the Houston

---

[12] "When the 'related facts' are community knowledge or immaterial to a determination of the litigated issues, disqualification is not necessary." Insurance of America Agency Inc. v. Life Investors Insurance Company, 1997 WL 466529, No. 05-95-00923-CV, at *2 (Tex.App.—Dallas 1997).

[13] The City confuses the importance of Ready testifying in this case in general with the importance of the 90-day temporary suspension in an attempt to overstate the relative importance of the 90-day temporary suspension. (App.4:002.) But, the 90-day temporary suspension, removed from other aspects of the Trimmer-Davis' case that Ready may testify to at trial, is a very minor and insignificant part of this case. This case spanned from 2008 to 2011 and involved over 20 different witnesses in multiple department of the Houston Police Department. One 90-day temporary suspension does not warrant complete disqualification of Ogg.

Police Department, Ogg has successfully tried numerous cases against the City on behalf of other police officer plaintiffs. The likelihood of Trimmer-Davis locating new counsel with comparable skill and experience in the policies and procedures of the Houston Police Department, willing to take Trimmer-Davis' case to trial is low.

## 11.    THERE IS NO ADEQUATE REMEDY BY APPEAL

Appeal is not an adequate remedy for a trial court's erroneous disqualification of a party's chosen counsel. In re Butler, 987 S.W.2d 221, 224 (Tex. App.—Houston [14th Dist.] 1999, orig. proceeding) ("appeal from an order granting a motion to disqualify is inadequate because such an order results in immediate and palpable harm that disrupts the trial proceeding and deprives a party of the right to have counsel of its choice") (citing Schwartz v. Jefferson, 930 S.W.2d 957, 959 (Tex. App.—Houston [14th Dist.] 1996, orig. proceeding). "Because disqualification may result in immediate and palpable harm to a party by disrupting the trial proceedings and depriving the party of his or her counsel of choice," a trial court's ruling granting a motion to disqualify counsel is reviewable by mandamus.  In re Chonody, 49 S.W.3d 376, 379 (Tex. App.—Fort Worth 2000, no pet.)

As such, there is no adequate remedy by appeal in this case.

## PRAYER
[TRAP 52.3(i)]

Ogg respectfully requests the Court to issue a writ of mandamus ordering Respondent to vacate the January 14, 2015 Order disqualifying the Kim K. Ogg, R. Scott Poersckhe, and The Ogg Law Firm, PLLC from representing Trimmer-Davis and enter an order denying the Defendant's Motion to Disqualify.

Respectfully submitted,


/s/ R. Scott Poerschke
Kim K. Ogg
State Bar No. 15230200
kimogg@ogglawfrim.com

R. Scott Poerschke
State Bar No. 24067822
scott@ogglawfrim.com

THE OGG LAW FIRM, PLLC
3215 Mercer, Suite 100
Houston, Texas 77027
(713) 974-1600 – Telephone
(713) 621-2106 – Fax

## CERTIFICATION
## [TRAP 52.3(j)]

The undersigned has reviewed the petition and concluded that every factual statement in the petition is supported by competent evidence included in the appendix.

/s/ R. Scott Poerschke
R. Scott Poerschke

## CERTIFICATE OF SERVICE
## [TRAP 9.5(d)]

I, R. Scott Poerschke, certify that on June 1, 2015 a true and correct copy of the Petition for Writ of Mandamus and Relator's Appendix were sent by the method indicated to the following individuals:

Henry N. Carnaby
CITY OF HOUSTON
P.O. Box 368
Houston, Texas 77001-368
900 Bagby, 3rd Floor
Houston, Texas 77002
(832) 393-6309 – Telephone
(832) 393-6259 – Fax

Via Email henry.carnaby@houstontx.gov
Via CM/RRR 7011-3500-0002-2609-4723

Suzanne R. Chauvin
CITY OF HOUSTON
P.O. Box 368
Houston, Texas 77001-368
900 Bagby, 3rd Floor
Houston, Texas 77002
(832) 393-6309 – Telephone
(832) 393-6259 – Fax

Via Email suzanne.chauvin@houstontx.gov
Via CM/RRR 7011-3500-0002-2609-4723

The Honorable Caroline Baker
295th Judicial District Court
201 Caroline, 14th Floor
Houston, Texas 77002
(713) 368-6450 – Telephone

Via CM/RRR 7011-3500-0002-2609-4716


/s/ R. Scott Poerschke
R. Scott Poerschke


## CERTIFIACTE OF COMPLIANCE

This is to certify that this petition contains a total of 10,282 words and was drafted on MS Word 2011 using the typeface of "Century Schoolbook" in 13pt font for text and 10pt font for footnotes.


/s/ R. Scott Poerschke
R. Scott Poerschke